UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVE ROSE, ET AL.,<br>    Plaintiffs | CIVIL ACTION |
| VERSUS | NO. 15-813 |
| COMPUTER SCIENCES CORPORATION,<br>    Defendant | SECTION "E" (4) |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Partial Summary Judgment as to Controlling Law.[1] The motion is opposed.[2]

## BACKGROUND

Plaintiffs brought suit against Computer Sciences Corporation ("CSC") seeking unpaid wages pursuant to an employment contract they executed in connection with their voluntary deployment in Southwest Asia.[3] The relevant facts are not in dispute.[4] The Plaintiffs, through their employment with CSC, provided support services to the United States Department of Defense.[5] Each Plaintiff each executed two documents related to his or her employment with CSC, an offer letter and a Foreign Travel Letter ("FTL"), both provided by CSC.[6] Each employee's offer letter quoted an hourly rate for his or her employment.[7] The FTL details the compensation and benefits each employee will receive

---

[1] R. Doc. 82.
[2] R. Doc. 89.
[3] R. Doc. 41.
[4] The Plaintiffs admitted the facts in the Defendant's Statement of Undisputed Facts are correct. *See* R. Doc. 89-1.
[5] R. Doc. 41.
[6] R. Doc. 82-2 at ¶ 2.
[7] Inexplicably, the Defendant did not provide copies of the letters in connection with this motion for summary judgment. The letters are in the record as attachments to the Plaintiffs' motion for summary judgment. R. Doc. 96. For example, see R. Doc. 96-2 (offer letter to Steve Rose) and 96-3 (FTL to Steve Rose). Defendant admitted that these are the offer letter and FTL. See Doc. 1-2-1.

1

while overseas. With respect to base pay, the FTL states: "Your base weekly salary will not change as a result of this assignment."[8]

The Plaintiffs contend they received less compensation than they should have under the terms of the offer letter.[9] The Plaintiffs seek unpaid wages at the hourly rate stated in their respective offer letters for all hours worked, and statutory penalties and legal fees pursuant to Louisiana Revised Statutes section 23:631.[10]

Defendant filed a motion for partial summary judgment on the issue of controlling law.[11] CSC argues that Louisiana choice-of-law rules require this Court to apply the law of the southwest Asian country in which each Plaintiff performed his or her contract, specifically, Kuwait, Afghanistan, or Iraq ("SWA countries").[12] CSC asserts that Louisiana law places particular importance on the place of the contract's performance, and so the employment contracts should be interpreted according to the laws of the respective SWA country in which each Plaintiff performed.[13] Defendant also seeks summary judgment that Plaintiffs are not entitled to remedies under Louisiana law.[14]

Plaintiffs argue that the law of Virginia should govern the dispute.[15] Plaintiffs rely on the choice-of-law analysis in *Rishell v. Computer Sciences Corporation*,[16] a case in which former employees brought breach of contract claims against CSC based on the same form of offer letters and FTLs at issue in the present matter. In that case, the court applied the choice of law rules of Mississippi[17] and determined that, as Virginia was the "center of

---

[8] *Id.*
[9] R. Doc. 15 at 7-8.
[10] *Id.* at ¶¶ 39–41.
[11] R. Doc. 82-1. The contracts do not contain a choice of law provision.
[12] R. Doc. 82-1 at 1-2.
[13] R. Doc. 82-1 at 6.
[14] La. Rev. Stat. §§ 23:631-23:632.
[15] R. Doc. 89 at 1.
[16] 647 Fed. Appx. 226 (4th Cir. 2016).
[17] The case was originally brought in federal court in Mississippi, but was successfully removed to Virginia by CSC. 2014 WL 7014242 at *2.

gravity," Virginia law should apply.[18] Affirming the district court's grant of summary judgment, the Fourth Circuit found that Virginia had "the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, [had] the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation."[19] Despite their argument that Virginia law applies, Plaintiffs seek remedies under Louisiana law.[20]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] "An issue is material if its resolution could affect the outcome of the action."[22] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[23] All reasonable inferences are drawn in favor of the nonmoving party.[24] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[25]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[26] If the

---

[18] *Rishell*, 647 Fed. Appx. at 229.
[19] *Id.*
[20] R. Doc. 41 at 9.
[21] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[22] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[23] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[24] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[25] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[26] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[27]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[28] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[29] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving

---

[27] *Celotex*, 477 U.S. at 322–24.
[28] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[29] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

party."[30] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[31] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[32] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[33]

## ANALYSIS

I. Choice of Law

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits.[34] The parties agree that Louisiana choice-of-law rules apply.[35] CSC seeks partial summary judgment on the applicable substantive law governing each Plaintiff's breach of contract claim.[36]

Louisiana Civil Code article 3515 provides the residual choice-of-law rule: "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."[37] In determining which state's policies would be "most seriously impaired," courts are

---

[30] *Celotex*, 477 U.S. at 332–33.
[31] *Id.*
[32] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[33] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[34] *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).
[35] See R. Doc. 82-1 at 8 and R. Doc. 89 at 2.
[36] R. Doc. 82-1.
[37] LA. CIV. CODE art. 3515.

instructed to consider "(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."[38]

Article 3537 governs the choice-of-law inquiry in cases involving conventional obligations.[39] It similarly provides that a contract dispute should be "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."[40] The "strength and pertinence of the relevant policies" of the states involved are evaluated according to:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties, (2) nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, or promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[41]

The comments to Article 3537 instruct the Court to apply Article 3537 in conjunction with Article 3515.[42] "[T]he objective is to identify the state whose policies would be most seriously impaired, that is, the state that, in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal, social, economic, and other consequences if its law were not applied to the issue at hand."[43]

---

[38] *Id.*
[39] LA. CIV. CODE art. 3537.
[40] *Id.*
[41] LA. CIV. CODE art. 3537.
[42] LA. CIV. CODE art. 3537 cmt. c.
[43] *Id.* (internal quotation marks omitted).

As an initial matter, the Court need not "conduct a choice-of-law analysis to determine which state's law to apply in situations when the law of the two involved states is the same."[44] Upon order of the Court,[45] the parties submitted supplemental memoranda addressing whether there is a true conflict between the laws of Virginia, Louisiana, Kuwait, Afghanistan, and Iraq.[46] After reviewing the supplemental memoranda, the Court is convinced there are differences among the laws of the involved states on relevant issues of contract formation, contract interpretation, and the availability of remedies. Accordingly, the Court must perform Louisiana's choice-of-law analysis.

A. Relevant Policies of the Involved States

The threshold step in Louisiana's choice-of-law inquiry is to identify the "relevant policies" of the involved states.[47] The comments to article 3537 note that these policies are "identified through the resources of the interpretative process by focusing on the specific rules of substantive contract law whose applicability is being urged in the particular case."[48]

This case focuses on issues of contract formation and interpretation, including the determination of whether a contract is ambiguous, and if so, the harmonization of ambiguous or conflicting terms. Both Virginia and the SWA countries have an interest in the dispute. Plaintiffs assert that Virginia's policy would be the most impaired if its laws were not applied because Virginia "has the strongest interest in insuring its corporate

---

[44] *Maldonado v. Kiewit Louisiana Co.*, 2013-0756 (La. App. 1 Cir. 3/24/14) 246 So. 3d 210. *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005).
[45] R. Doc. 121.
[46] R. Docs. 124, 127.
[47] LA. CIV. CODE art. 3537 cmt. c.
[48] LA. CIV. CODE art. 3537 cmt. c.

7

citizens (who solicit U.S. citizens to work overseas) follow their contracts."[49] In contrast, Defendants argue that the SWA countries have the most compelling interest in having their law applied, because the work performed—"the attachment and removal of electronic warfare equipment to vehicles"—implicates each country's particular interests.[50] However, Plaintiffs' claims do not involve any legal issues related to the sufficiency of Plaintiffs' performance of the contract in the SWA countries. The alleged breach does not implicate, for example, matters of public safety or the local administration of justice, and does not involve any deficient performance or foreign victims. Thus, while the SWA countries have an interest in regulating work performed within their borders, the policies of Virginia would be most seriously impaired if its laws are not applied to this dispute.

B. The Pertinent Contacts of Each State

Article 3537 instructs the Court to review "the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties."[51]

1. *Afghanistan*

Defendant argues the law of Afghanistan should be applied to the seventeen Plaintiffs who performed their employment contracts in that country.[52] Of these, seven

---

[49] R. Doc. 89 at 7.
[50] R. Doc. 82-1 at 10.
[51] La. Civ. Code art. 3537.
[52] R. Doc. 82-2 at 2-10, citing Declaration of Joseph Ward at Exhibit 1(a). These plaintiffs are Leo Anderson, Terry Bethea, Ouida Fields, Jan Litherland, Steve Rose, Songkane Sackaly, Kenneth Alford, Guy Bullis, James Butler, Jamaris Chaney, Joseph Fortier, Terrence Hampton, John Hawkins, Helen Haynes, Maurice Robinson, Christopher Smith, Jessica Stephens, and Warren Warr. *Id.*

8

received and signed their employment documents in Afghanistan.[53] None of the Plaintiffs is domiciled in Afghanistan.[54]

### 2. *Iraq*

Defendant argues the law of Iraq should be applied to the three Plaintiffs who performed their employment contracts in that country.[55] One of these Plaintiffs received and signed his employment documents in Iraq.[56] None of the Plaintiffs is domiciled in Iraq.[57]

### 3. *Kuwait*

Defendant argues the law of Kuwait should be applied to the fifteen Plaintiffs who performed their employment contracts in that country.[58] Of these, seven Plaintiffs received and signed their employment documents while in Kuwait.[59] None of the Plaintiffs is domiciled in Kuwait.[60]

### 4. *Virginia*

Defendant argues the law of Virginia should be applied to all claims. Defendant's headquarters are in Virginia.[61] George Edwards, the Program Manager for the division that hired the Plaintiffs, was based in Defendant's Virginia headquarters.[62] Edwards had

---

[53] *Id.* These plaintiffs are Leo Anderson, Kenneth Alford, Jamaris Chaney, Terrence Hampton, John Hawkins, Maurice Robinson, and Jessica Stephen. *Id.*
[54] *Id.* (listing the American states in which each plaintiff is domiciled).
[55] R. Doc. 82-2 at 2-10, citing Declaration of Joseph Ward at Exhibit 1(a). These plaintiffs are Taurus Davis, Damien Robinson, and Robert Nicholas. *Id.*
[56] This plaintiff is Robert Nicholas. *Id.*
[57] *Id.* (listing the American states in which each plaintiff is domiciled).
[58] R. Doc. 82-2 at 2-10, citing Declaration of Joseph Ward at Exhibit 1(a). These plaintiffs are Ifinenne Bivens, Leachman Cherrington, Alfred Lawrence, John Cipriano, Rafael Cosmetirado, George Crawford, Julia Ann Deans, Derrick Fuller, Kelia Jiminez-Santiago, Sidney Lewis, Lawrence Miller, Lakisha Parker, Alfred Smith, Brian Smith, and Tarian Knighton. *Id.*
[59] These plaintiffs are Ifinenne Bivens, Rafael Cosmetirado, George Crawford, Sidney Lewis, Lawrence Miller, Alfred Smith, and Brian Smith. *Id.*
[60] *Id.* (listing the American states in which each plaintiff is domiciled).
[61] R. Doc. 82-2 at ¶ 3.
[62] *Id.* (citing Deposition of George Edwards at 21:19-22:13).

overall responsibility for the program.[63] CSC made the decision to hire the employees at its Virginia headquarters, and the hiring manager signed off on the offer letters in Virginia.[64] George Edwards, as Program Manager, and his Virginia-based human resources staff, communicated the conditions of employment to the Plaintiffs.[65] Plaintiffs' employment and payroll records are primarily stored in Virginia.[66] The payroll checks were generated from CSC's home office in Virginia.[67] The Plaintiffs are all United States citizens.[68]

The Court finds that Virginia has significantly more pertinent contacts with the parties and the transaction than Iraq, Afghanistan, or Kuwait.

C. The Nature, Type, and Purpose of the Contract

Article 3537 also instructs courts to look at the "nature, type, and purpose of the contract."[69] The revision comments to article 3537 state, "[i]n an employment contract, the place where the services were to be rendered would usually be among the more important factual contacts, and the policy of 'protecting one party from undue imposition by the other' would acquire particular significance."[70] CSC interprets this commentary to give the place of the contract's performance dispositive weight.[71]

The Court agrees that the place of performance is an important factor, but given the circumstances of this case, does not persuade the Court that the law of the SWA countries should apply. Specifically, neither the text of the statute nor the revision comments demand such a result. The revision comments merely state that the place of

---

[63] *Id.* at 4 (citing Deposition of George Edwards).
[64] R. Doc. 82-10 at 6 (Deposition of George Edwards).
[65] R. Doc. 82-10 at 7, ¶ 22 (Deposition of George Edwards.)
[66] R. Doc. 89-3 at 2 (Declaration of George Edwards).
[67] R. Doc. 96, Exhibit 7, ¶ 8 (Deposition of Ifinenne Bivens).
[68] R. Doc. 82-2 at 2-10.
[69] La. Civ. Code art. 3537.
[70] La. Civ. Code art. 3537 (rev. comments).
[71] La. Civ. Code art. 3537 (rev. comments).

10

performance is "usually . . . among the more important factual contacts." This language hews closely to the flexible approach described throughout the revision comments, which state, "[t]his list is neither exhaustive nor hierarchical and is intended to discourage rather than encourage a mechanistic counting of contacts as a means of selecting the applicable law."[72]

### D. The Policies Referred to in Article 3515

Finally, article 3537 instructs courts to consider the policies referenced in article 3515—the needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state—as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by another.

These policies all weigh in favor of applying Virginia law. The primary issue in this case is the interpretation of an employment contract affecting dozens of United States citizens who were deployed by a Virginia corporation to multiple countries. Applying a single body of law to interpret the form of contract affecting so many individuals will produce more orderly, predictable transactions, and will claify the expectations of parties to future contracts.

In light of the foregoing considerations, the Court finds that the policies of Virginia will be most seriously impaired if its law is not applied.[73]

---

[72] *Id.*
[73] *See* LA. CIV. CODE art. 3515.

## II. Availability of Louisiana Statutory Penalties

Plaintiffs argue that Virginia law should apply to the Court's determination of whether the contracts were breached, but ask the Court to apply Louisiana law with regard to remedies for their claims under the doctrine of *lex fori*—the law of the forum.[74] Specifically, Plaintiffs claim back wages pursuant to La. Rev. Stat. §§ 23:631 and 23:632.[75] Defendant responds that the doctrine of *lex fori* supports the application of only procedural rights, not substantive rights.[76]

Louisiana law provides that "[s]ubstantive laws establish new rules, rights, and duties or change existing ones."[77] Procedural laws, in contrast "prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws."[78] If a law "regulate[s] or evaluat[es] the legality of conduct or activity," it is substantive, not procedural.[79] With regard to specific types of damages for example, Louisiana courts have held that a law creating "[t]he right to recover punitive damages and attorney fees . . . is a 'substantive' law."[80]

Section 23:631 imposes a duty on an employer to pay a terminated employee the amount then due, under the terms of the employment, not later than fifteen days following the date of discharge or resignation. An employer who fails or refuses to comply with the provisions of section 23:631 shall be liable to the employee either for ninety days' wages at the employee's daily rate of pay, or full wages from the time of the employee's demand for payment until the employer tenders the amount of unpaid wages due to the

---

[74] R. Doc. 15 at 7. LA. REV. STAT. § 23:631.
[75] *Id.* at 8. *See also* R. Doc. 89 at 8.
[76] R. Doc. 94 at 8.
[77] *Segura v. Frank*, 630 So. 2d 714, 723 (La. 1994).
[78] *Id.*
[79] *Church Mut. Ins. Co. v. Dardar*, 2013-2341 (La. 5/7/14), 145 So. 3d 271, 280.
[80] *Frito-Lay, Inc. v. WAPCO Constructors, Inc.*, 520 F. Supp. 186, 190 (M.D. La. 1981). *See also Anderson v. Avondale Industries, Inc*, 2000-2799 (La. 10/16/01), 798 So.2d 93, 97 (identifying a law that established a right to punitive damages for reckless conduct as "clearly a substantive law").

employee, whichever is the lesser amount of penalty wages.[81] Sections 23:631 and 23:632 plainly provide substantive rights, as the provisions "create a cause of action which attaches new consequences" for employers.[82]

As discussed above, the policies of Virginia will be most seriously impaired if its law is not applied to the determination of whether the employment contracts have been breached. The analysis is the same with respect to the attorneys' fees and penalties owed by this Virginia-based employer. This Court will apply the substantive law of Virginia to the merits of Plaintiffs' breach of contract claim, including the remedies available to the Plaintiffs. Accordingly, this Court finds that sections 23:631 and 23:632 are not applicable in this action.

## CONCLUSION

**IT IS ORDERED** that CSC's motion for partial summary judgment is **DENIED IN PART**. Virginia substantive law shall apply to this matter.

**IT IS FURTHER ORDERED** that CSC's motion for partial summary judgment is **GRANTED IN PART.** Plaintiffs may not seek damages under La. R.S. 23:631 and 632.

**New Orleans, Louisiana, this 30th day of October, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[81] LA. REV. STAT § 23:632.
[82] *Church Mut. Ins. Co. v. Dardar*, 2013-2341 (La. 5/7/14), 145 So. 3d 271, 280. *See also Williams v. Petroleum Helicopters, Inc.*, 3032 (La. App. 3 Cir. 4/23/70); 234 So. 2d 522 (statute providing for particular remedy is substantive).