UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| STEVE ROSE, ET AL., | CIVIL ACTION |
| --- | --- |
| Plaintiffs | |
| VERSUS | NO. 15-813 |
| COMPUTER SCIENCES CORPORATION, | SECTION "E" (4) |
| Defendant | |

## ORDER AND REASONS

Before the Court are the parties' cross-motions for summary judgment.[1] Both Plaintiffs' motion and Defendant's motion are opposed.[2] For the reasons explained below, the Plaintiffs' Motion for Summary Judgment[3] is **GRANTED**. The Defendant's Motion for Summary Judgment[4] is **DENIED**.

## BACKGROUND

Plaintiffs brought suit against Computer Sciences Corporation ("CSC") seeking unpaid wages pursuant to an employment contract they executed in connection with their voluntary deployment to Southwest Asia.[5] Each Plaintiff executed two documents related to his or her employment with CSC, an offer letter and a Foreign Travel Letter ("FTL"), both provided by CSC.[6] Each employee's offer letter quoted an hourly rate for his or her employment, specifically stating, "your compensation will consist of an hourly rate of [between $29 and $33], which will be paid biweekly."[7] The offer letter also mentions other benefits available to the candidate upon acceptance, including health insurance,

---

[1] R. Docs. 95 and 96.
[2] R. Docs. 104 and 102.
[3] R. Doc. 96.
[4] R. Doc. 95.
[5] R. Doc. 41.
[6] R. Doc. 110-2 at ¶ 2.
[7] R. Doc. 96-13 (Offer letter of Plaintiff Helen Haynes).

1

enrollment in a 401(k) plan, and tuition reimbursement, but does not otherwise describe the employee's compensation.[8]

The FTL details the conditions of the employee's deployment overseas.[9] It describes a standard of conduct to which the employee should comply while in the country of his or her deployment, and identifies potential legal consequences of not complying.[10] The FTL also explains medical requirements for overseas deployment and the logistical details of the employee's travel to the relevant country.[11] The "Compensation" section states that the employee's base pay will not change as a result of the overseas assignment, explains the different "uplifts" available to the employee for working in a potentially dangerous environment, and clarifies that the pay is taxable income.[12]

The Plaintiffs contend they received less compensation than they should have under the terms of the offer letter.[13] Specifically, Plaintiffs argue that CSC paid them a fixed amount each pay period regardless of how many hours they worked, rather than at the hourly rate stated in their offer letter.[14] Plaintiffs seek unpaid wages at the hourly rate of their respective offer letters for all hours worked.[15] Plaintiffs seek damages for the period between March 13, 2012 and June 1, 2012.[16]

---

[8] *Id.*
[9] *See, e.g.*, R. Doc. 96-15 (FTL of Plaintiff Helen Haynes).
[10] *Id.* at 1-2.
[11] *Id.* at 2-3.
[12] *Id.* at 3-4. *See also* R. Doc. 96-46 at 2.
[13] R. Doc. 15 at 7-8.
[14] R. Doc. 96-46
[15] *Id.* at ¶¶ 39–41. The Plaintiffs also sought statutory penalties and legal fees pursuant to LA. REV. STAT. 23:631. On October 26, 2017, the Court ruled that Plaintiffs are unable to recover these damages pursuant to Louisiana law. *See* R. Doc. 137.
[16] This Court held that claims for wages owed prior to March 13, 2012 are prescribed by Louisiana's three-year prescription period. *See* R. Doc. 78. On June 1, 2012, CSC required all employees to sign a new letter agreeing to be paid according to an annualized salary.

On August 10, 2017, the parties filed cross-motions for summary judgment.[17] Plaintiffs argue the offer letter and the FTL together comprise an unambiguous employment contract that CSC breached by "arbitrarily capping their pay and failing to pay the agreed hourly rate for all hours worked."[18] Defendant puts forth several arguments in favor of its motion for summary judgment.[19] First, Defendant argues that the two documents have conflicting terms, but they can be reconciled to provide for pay on a salary basis. Alternatively, Defendant argues that, if the terms of the offer letter and the FTL cannot be reconciled, then either there was no meeting of the minds, or the Court should rely on parol evidence to discern the parties' intent.[20]

On October 26, 2017, the Court ruled that the law of Virginia applies in this action.[21]

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] "An issue is material if its resolution could affect the outcome of the action."[23] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[24] All reasonable inferences are drawn in favor of the nonmoving party.[25] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[17] R. Docs. 95 and 96.
[18] R. Doc. 96-46 at 7.
[19] R. Doc. 95.
[20] R. Doc. 95-1 at 6.
[21] R. Doc. 137.
[22] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[23] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[25] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[26]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[27] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[28]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[29] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled

---

[26] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[27] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[28] *Celotex*, 477 U.S. at 322–24.
[29] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

to summary judgment as a matter of law.[30] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[31] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[32] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[33] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[34]

## ANALYSIS

Summary judgment is appropriate in this case as the parties do not dispute the relevant facts.[35] All domestic and overseas employees received the same form of offer

---

[30] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[31] *Celotex*, 477 U.S. at 332–33.
[32] *Id.*
[33] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[34] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[35] R. Doc. 110-2 (Plaintiffs admitting Defendant's statements of undisputed material fact). Defendant denies several of Plaintiffs' statements of undisputed material fact. R. Doc. 102-1. The Court finds that these disputes are not material to the disposition of the case, however, as they either involve legal issues that must be resolved by the Court, R. Doc. 102-1 at ¶¶ 4-5, or concern irrelevant parol evidence, *id.* at ¶ 7.

letter.[36] The employees, who were specifically hired to serve as defense contractors in Iraq, Afghanistan, or Kuwait simultaneously received and executed both an offer letter and a FTL.[37] The texts of the documents are not contested.[38] The parties dispute only the meaning of the documents' texts, specifically, whether the documents provide for an hourly wage or a fixed salary during the Plaintiffs' employment overseas. This issue must be decided by the Court as a matter of law.[39]

The Court's objective in interpreting a contract is to give effect to the parties' intent.[40] In discerning the parties' intentions, the Court must look first to the contract itself.[41] If the contract is unambiguous, the Court should look no further than the four corners of the document.[42] A contract is ambiguous if it can reasonably be interpreted in more than one way.[43] A contract is not ambiguous, however, simply because the parties disagree about the meaning of the contract's terms.[44]

Under Virginia law, if parties have entered into multiple documents relating to a business transaction, a court must construe the documents "together to determine the parties' intent."[45] Plaintiffs' offer letters and FTLs were executed contemporaneously.[46] Accordingly, the two documents "will be construed together as forming one contract."[47]

---

[36] R. Doc. 110-2 at 1.
[37] *Id.* at ¶¶ 11, 22, 35, 50, 62, 73.
[38] *Compare* R. Docs. 95-38 and 95-39 *with* R. Docs. 96-13 and 96-14 (Offer letter and FTL of Plaintiff Helen Haynes).
[39] *See Homeland Training Center, LLC v. Summit Point Auto. Research Center*, 594 F.3d 285, 290 (4th Cir. 2010).
[40] *Pocahontas Mining Ltd. Liab. Co. v. CNX Gas Co.*, 276 Va. 346 (2008).
[41] *Id.* at 353.
[42] *Id.*
[43] *Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n, Inc.*, 287 Va. 425 (2014).
[44] *Id.*
[45] *First Am. Bank of Va. v. J.S.C. Concrete Const., Inc.*, 259 Va. 60, 523 S.E.2d 496, 500 (2000).
[46] R. Doc. 110-2 (Plaintiffs admit to Defendant's statements of uncontested fact).
[47] *Landsdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne, LLC*, 718 F.3d 187, 205 (4th Cir. 2013). *See also Virginia Hous. Dev. Auth. V. Fox Run Ltd. P'ship*, 255 Va. 356, 364 (1998).

The offer letter unequivocally states in its opening paragraph, "compensation will consist of an hourly rate of [dollar amount], which will be paid bi-weekly."[48] The parties agree that the offer letter provides for compensation on an hourly rate.[49] The dispute is whether the phrase "base weekly salary" in the FTL alters the otherwise clear terms of the offer letter. The FTL uses the word "salary" five times. Under the sub-heading "Base Pay," the FTL states, "[y]our base weekly salary will not change as a result of this assignment," and that the employee "will be eligible for salary reviews in accordance with standard CSC policies."[50] Hardship pay is "paid as a percentage of your base weekly salary."[51] Danger pay is similarly defined as a percentage of "weekly base salary."[52] Lastly, the FTL states that an employee's "base salary and all other compensation . . . are taxable income."[53]

The Court finds that the offer letter and the FTL, read together, unambiguously provide for an hourly rate of pay for the Plaintiffs' work overseas.[54] A Court should seek to "harmonize" the various provisions of a contract, "giving effect to each when reasonably possible."[55] Accordingly, the mere mention of a "base weekly salary" in the FTL does not rewrite the terms of the offer letter.[56] In the specific context of the FTL, the phrase "base weekly salary" is refers to the employee's baseline compensation to establish rates of danger pay and hardship pay. Nothing in the FTL limits an employee to forty hours of

---

[48] R. Doc. 96-13 (Offer Letter of Plaintiff Helen Haynes).
[49] R. Doc. 110-2 at ¶ 11.
[50] *Id.* at 3.
[51] *Id.*
[52] *Id.* at 4.
[53] *Id.*
[54] Even if the Court were to find that the contract were ambiguous, the result would not change. Under Virginia law, courts construe ambiguous terms against the drafter. *See Martin & Martin, Inc. v. Bradley Enterprises, Inc.*, 504 S.E.2d 849, 851 (Va. 1998) ("In the event of an ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement.").
[55] Schuiling v. Harris, 286 Va. 187, 202 (2013).
[56] To find otherwise would be contrary to basic rules of contractual interpretation. *Robinson-Huntley*, 756 S.E.2d at 418 ("Contracts are construed as written, without adding terms that were not included by the parties.")

compensation per week. "Base weekly salary" is thus best read as the amount an employee would be paid under a standard 40-hour work week, notwithstanding any additional compensation owed, including danger pay, hardship pay, or pay for hours worked in excess of the base number. This definition harmonizes the other provisions of the contract, as "base weekly salary" does not alter the plain meaning of the phrase "compensation will consist of an hourly rate."

Defendant contends that because the FTL governs other aspects of the overseas deployment, it trumps the "general" provisions of the offer letter.[57] The Court disagrees. The FTL contains no provision stating that its terms override those of the offer letter. Indeed, the FTL provides that the employee's pay "will not change as a result of this assignment."[58] Defendant repeatedly asserts that the FTL contained a "comprehensive compensation section,"[59] but the FTL neither states the employee's compensation nor redefines the hourly rate as a fixed annual salary. The employee's hourly rate of pay is stated only in the offer letter. Accordingly, because the FTL is silent as to the meaning of "base weekly salary," the Court must look to the offer letter for its definition. Rather than superseding the offer letter, the FTL must be read with the offer letter to form one contract.

Interpreting the contracts as written, the Court finds that the Plaintiffs are entitled to summary judgment on their breach of contract claim. The two documents, interpreted as a single contract, provide for an hourly rate of pay for all hours worked overseas.

## CONCLUSION

**IT IS ORDERED** that Plaintiffs' motion for summary judgment is **GRANTED**.

---

[57] R. Doc. 95-1 at 22.
[58] *Id.* at 2-3.
[59] *See* R. Doc. 102 at 14.

8

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **DENIED.**

**New Orleans, Louisiana, this 6th day of November, 2017.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**