UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEVE ROSE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-00813** |
| **COMPUTER SCIENCES CORPORATION** | **SECTION: "E" (4)** |

## ORDER

Before the Court is the Defendant's **Motion for Leave to Amend Its Answer to Assert a Counterclaim (R. Doc. 181)**. The motion is opposed. R. Doc. 189. The Defendant filed a reply to the opposition. R. Doc. 190. The motion was heard on the briefs.

### I.     Background

This diversity action was filed in the District Court on March 13, 2015. R. Doc. 1. Numerous individual Plaintiffs filed suit against Computer Sciences Corporation ("CSC") for breaching their employment contracts. *Id.* In particular, the Plaintiffs allege that in 2006, CSC received a number of contracts with the Department of Defense to provide services in Kuwait and Afghanistan, including the installation and repair of electronic jamming devices on military combat vehicles. *Id.* at p. 5. To perform those contracts, CSC allegedly recruited a number of United States citizens to work overseas. *Id.* When CSC offered an individual a job it would send an offer letter and a "Foreign Travel" letter. *Id.* The offer letter quoted a salary of about $65,000—which the Plaintiffs allege amounted to less than $15 an hour as they worked eighty-four (84) hours per week—and the Foreign Travel letter described fringe benefits including certain discretionary payments. *Id.*

Allegedly, in 2009, CSC changed its offer letter to include an hourly rate that averaged $32 an hour and a quoted annualized amount of the hourly rate multiplied by 2080—or forty (40) hours for fifty-two (52) weeks a year. However, CSC allegedly still required its employees to work

eighty-four (84) hours per week. Again in 2010, CSC changed its offer letter to remove any reference to an annualized amount. *Id.*

The Plaintiffs allege that CSC never intended to pay the quoted annual rate for all hours worked. *Id.* at p. 6. Rather, the Plaintiffs argue that CSC paid the flat annualized amount based on a forty-hour week while requiring the Plaintiffs to work eighty-four-hour weeks. *Id.* As such, CSC allegedly paid the Plaintiffs less than half of the agreed rate. *Id.* As such, the Plaintiffs filed the instant action seeking damages based on the agreed hourly rate for all hours worked; a statutory penalty of 90 days wages under Louisiana Revised Statute § 23:631; and reasonable legal fees and prejudgment interest. *Id.* at p. 7.

The Defendant filed the instant motion seeking leave to amend its answer to assert a counterclaim for abuse of rights. R. Doc. 181. Defendant argues that the Court has affixed the maximum amount the Plaintiffs can receive, Defendant has offered that amount to settle the matter, and Plaintiffs—while having the right to refuse the settlement offer—gain no advantage as they cannot obtain additional recovery and are in fact harming and continuing to harm the Defendant by causing the incurrence of costs associated with continued litigation. It states pursuant to Federal Rule of Civil Procedure 15(a) the motion to amend should be granted.

Plaintiffs oppose the motion. R. Doc. 189. They argue that the deadline to file amended pleadings has passed and there has been no hint of a refusal to settle. Instead, Plaintiffs' counsel had two knee surgeries in a four month period, the most recent being April 12, 2018, such that he got behind on matters and did not timely return settlement documents. Plaintiffs indicate that all settlement documents except for two have been signed and returned to the defendant and the delay in responding was not due to any improper motive. Plaintiffs' counsel states that a status

conference would have been a more productive way of getting the case on track rather than filing a counterclaim for abuse.

In reply, the Defendant argues that Plaintiffs admit they have fallen behind in the case, they have yet to submit all the executed agreements, does not address all of Defendant's complaints, and have not directed the Court to any undue delay, bad faith, dilatory motive, undue prejudice, repeated failures to cure deficiencies, or futility. R. Doc. 190.

## II.    **Standard of Review**

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.' " *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). When denying a motion to amend, the court must have a "substantial reason" considering such factors as " 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... and futility of the amendment.' " *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994).

### III.   Analysis

As an initial matter, the District Court issued a Scheduling Order in this matter stating that, "[a]mendments to pleadings, third party actions, cross-claims, and counterclaims shall be filed no later than May 21, 2018." R. Doc. 177. On May 21, 2018, the Defendant attempted to file an amended answer with counterclaim, however, the document was deficient because leave of Court was required and the document was not filed as a motion. R. Doc. 180. The Defendant then corrected the deficiency on May 25, 2018, within the seven (7) days from the original filing as provided for by the clerk's office. As a result, the motion to amend is timely pursuant to the District Court's Scheduling Order and the Court is required to apply a Rule 15(a) analysis to the motion.

A jury trial was originally scheduled in this matter on November 27, 2017, but three weeks prior to trial the parties filed a Joint Notice of Settlement into the record indicating that a settlement had been reached and requested 60 days to finalize the paperwork. R. Doc. 144. The District Court then issued a 60-day order of dismissal, retaining jurisdiction to enforce the settlement or reopen the action if the settlement was not consummated. R. Doc. 148. Nearing the close of the 60-day period CSC then filed a motion to enforce what it believed the settlement agreement to be. R. Doc. 151.The District Court found that there was no meeting of the minds with respect to the settlement agreement and that the legal requirements for an enforceable settlement agreement were not met. R. Doc. 176. As a result, the District Court vacated its order of dismissal and returned the case to the trial docket.

The Defendant then filed its motion for leave to amend its answer to assert a counterclaim for abuse of rights. R. Doc. 181. It seeks to assert this claim against the fifteen (15) Plaintiffs who remain in the case based on their acts and omissions during the litigation. CSC asserts that during the District Court's ruling on a motion for summary judgement it delineated the potential recovery

period of March 13, 2012 through June 1, 2012. According to CSC it has offered eight (8) of the Plaintiffs the maximum amount of recovery they could achieve through litigation, but not one has accepted the offer to date. It further states that five additional Plaintiffs offered to settle their claims in open court on June 20, 2018, which CSC accepted, sent draft settlement agreements to on April 3, 2018 (as well as to two additional Plaintiffs who also settled), but none of these seven Plaintiffs have executed the settlement agreement and release.

CSC argues that while Plaintiffs have the right to refuse the defendant's offer they gain no advantage because they cannot gain additional recovery merely by continuing the litigation. Further, it argues that Plaintiffs have harmed and continue to harm CSC because the denial of the offers have increased the costs associated with continuing litigation. CSC contends upon information and belief, the motive for refusing the maximum amount of recovery is either aimed at harming the Defendant or extorting monies to which Plaintiffs are not entitled.

Finally, CSC argues that the motion is not motivated by bad faith, dilatory motive or undue delay, is not an attempt to cure deficiencies of amendments previously allowed, will not prejudice the Plaintiffs, and is not futile.

The Plaintiffs sought leave to file an out of time response to the motion, which this Court granted. R. Docs. 184, 188. In the Plaintiffs response, they argue that the motion should be denied because the deadline to amend the pleadings expired before CSC sought leave to amend. R. Doc. 189. Plaintiffs contend that the allegations that the Plaintiffs have refused the settlement offer to harm or extort the defendant has no basis in fact and there has been "no hint of a refusal to settle." Instead, Plaintiffs' counsel indicates that he had knee surgery on April 12, 2018, the second in four months' time, and due to the recovery period got behind on several matters and was not able to timely return the settlement documents. *Id.* Plaintiffs' counsel further states a more productive way

5

to get the case on track would have been a status conference. Finally, Plaintiffs' counsel indicates all settlement documents, except for two, have been signed and returned to CSC.

CSC then filed a response arguing that Plaintiffs admit they have yet to submit all of the executed settlement agreements, Plaintiffs fail to address the argument that eight additional Plaintiffs have abused their rights based on the refusal to accept offers of complete and total relief, and Plaintiffs have pointed to no substantial reason for denying the motion to amend. R. Doc. 190.

The abuse of rights doctrine is a civilian concept which "applies when one of the following conditions is met: (1) the predominant motive for exercise of the right is to cause harm; (2) there is no legitimate motive for exercise of the right; (3) exercise of the right violates moral rules, good faith, or elementary fairness; or (4) exercise of the right is for a purpose other than that for which it was granted." *Mixon v. Iberia Surgical, L.L.C.,* 956 So.2d 76, 81 (La. App. 3d Cir. 2007), *writ denied,* 962 So.2d 438 (La. 2007).

As a general matter, "[t]he doctrine of abuse of rights has been invoked sparingly in Louisiana." *Slaughter v. Atkins*, Civ. Action No. 09-190-RET-CN, 2010 WL 3782128, at *13 (M.D. La. Sept. 21, 2010) (quoting *Steier v. Heller,* 732 So.2d 787, 790 (La. App. 2d Cir. 1999)). In order to be held liable "for exercising a right legally conferred upon him there must exist (1) no benefit to the person exercising the legal right, and (2) damage or injury to the person against whom the legal right is asserted." *Lambert v. Maryland Cas. Co.*, 403 So.2d 739, 757 (La. App. 4th Cir. 1981), *aff'd,* 418 So.2d 553 (La. 1982).

The first factor the court considers when determining whether or not to grant leave to amend pursuant to Rule 15(a) is whether the amendment will cause any undue delay, is in bad faith, or that the movant has some dilatory motive in filing the motion. CSC's argument for the claim is that the maximum monetary amount of the settlement has been offered, no executed

settlement agreements have been returned executed, and that because Plaintiff's cannot receive extra monetary recovery their lack of settlement is improper and aimed at harming CSC. However, a review of the record in this matter provides indications of bad faith with respect to this filing.

In the District Court's order vacating the order of dismissal in this case, the Court specifically states that that there were issues with whether all Plaintiffs would be required to sign a release of all claims, whether a settlement would entail the dismissal of all claims of the Plaintiffs or only those who signed the agreement, the attorney's fees owed, whether Plaintiffs' counsel would be required to withdraw from representing those Plaintiffs who declined to sign the settlement agreement, and whether there was a threshold number of Plaintiffs that would need to agree for CSC's offer to be valid. At that time, the Court found that the legal requirements for an enforceable settlement agreement were not met and vacated the order of dismissal.

Nothing in the record indicates that the issues identified by the District Court have been addressed by the parties with respect to each of the remaining Plaintiffs. As such, the record seems to reflect that the Plaintiffs in this action may have a legitimate interest in declining a settlement offer that is separate from the full monetary amount that could be recovered in the action. Further, in the proposed pleading the Defendant seeks to recover economic damages for the "improper refusal" as well as to recover the costs and attorney's fees associated with bringing the abuse of rights claims. The motion appears to be a means of attempting to force the Plaintiffs to accept settlement agreements by the use of a doctrine that is sparingly used and applied in Louisiana.

In addition, CSC has provided no case citations as to the propriety of the usage of an abuse of rights claim in an attempt to leverage and enforce a previously unagreed to settlement. CSC previously filed a motion to enforce settlement in this matter, ultimately resulting in the District Court's order vacating the dismissal and setting the matter back on the Court's docket. The next

filing by a party was the instant motion to amend to assert a counterclaim for abuse of rights. Considering the specific circumstances and timing of the motion in this case the intent appears to enforce the terms of prior unagreed to settlement via threat of extra litigation. As such, this leads the Court to conclude this filing is ultimately done in bad faith. This first factor, therefore, weighs against amendment.

The second factor the court considers when determining whether or not to grant leave to amend pursuant to Rule 15(a) is whether the party has previously filed repeated amendments to cure deficiencies before filing the instant motion. Courts in the Fifth Circuit have found that where a party has been given multiple opportunities to cure a defect, denial of a Rule 15(a) motion is proper. *See, e.g., Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 607–08 (5th Cir. 1998) (upholding district court's denial of 15(a) motion where plaintiffs had three prior opportunities to amend their complaint).

The Court finds that this is CSC's first attempt to assert an amended answer and counterclaim in this matter. As such, it is not being filed as a repeated attempt to cure deficiencies. Therefore, the second factor weighs in favor of amendment.

The third factor the court considers when determining whether or not to grant leave to amend pursuant to Rule 15(a) is whether the amendment will cause any undue prejudice to the opposing party. The Fifth Circuit has cautioned that amendments should not be permitted where they would "fundamentally alter the nature of the case." *In re American International Refinery, Inc.,* 676 F.3d 455, 467 (5th Cir. 2012) (noting that new allegations of fraud in bankruptcy proceeding would have "fundamentally altered" the nature of a case which had previously been limited to determination of whether one party possessed a conflict of interest warranting disgorgement of monies paid); *Mayeaux,* 376 F.3d at 427–28 (finding that complaint would be

"fundamentally altered" where proposed amendment would destroy jurisdiction and "effectively reconstruc[ed] the case anew."). Further, the Fifth Circuit has noted that a defendant is prejudiced if an added claim would require that the defendant, "reopen discovery and prepare a defense for a claim different from the [one]…that was before the court." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (quoting *Duggins v. Steak'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)).

This case involves the alleged breach of contract by the Defendant. The proposed counterclaim alleges that each of the Plaintiffs have intentionally chosen to harm the defendant by continuing the litigation and that no other reason could exist for their decision to not settle this matter. The Court finds that this abuse of rights claim essentially restructures and fundamentally alters the nature of the case. The abuse of rights claim would require discovery regarding the intent of each Plaintiff with respect to their decision not to settle the matter. Discovery closes on November 20, 2018, and while there may be sufficient time to conduct discovery it is not fundamentally related to the basis of the original complaint. As such, the third factor weighs against the amendment.

The fourth factor the court considers when determining whether or not to grant leave to file an amendment pursuant to Rule 15(a) is whether the amendment and potential new claims are futile. Abuse of rights claims are subject to Louisiana's one-year liberative prescriptive period. *Donahue v. Strain*, 2017 WL 3311241, at *19 (E.D. La. Aug. 3, 2017). Because the complained of refusal to accept a settlement agreement in this matter giving rise to CSC's proposed abuse of rights claim can derive no earlier than the date of November 3, 2017, which the parties indicate was the date they reached a tentative settlement, the claim would not yet have prescribed as of the time of filing the instant motion.

The abuse of rights doctrine typically applies in cases that implicate contractual or property rights. The instant claim involves a potential settlement agreement between parties and therefore would seemingly fall within the purview of an abuse of rights claim. However, the Court notes that in its review of abuse of rights cases it was unable to find a case where a party asserted abuse of rights for a refusal to settle during litigation. Further, the abuse of rights claim is premature based on CSC's own briefing and the record. CSC has provided no briefing that any potential settlement terms have been changed to resolve issues regarding attorney's fees and the other issues identified by the Court indicating there was no meeting of the minds necessary for settlement. An abuse of rights claim requires that there be no benefit to the person abusing the right or that the predominant motive is to harm, however, the prior order of the Court clearly shows legitimate reasons for not entering a settlement agreement that are separate from any intent to harm and CSC has shown no change in circumstances that would indicate the Court was incorrect in its determination or that circumstances and terms have changed. Ultimately, this claim appears premature based on CSC's own briefing and the record before the Court and, therefore, this factor weighs against granting leave to amend.

In addition, this Court will not conduct a full Rule 12(b)(6) analysis as that would ultimately be a dispositive matter handled by the District Court, but the Court does note that the factual allegations offered to support an abuse of rights claim do appear to be a threadbare recitation of the elements for an abuse of rights cause of action.

CSC, therefore, seeks to add an abuse of rights claim for refusal to settle even though the maximum monetary amount was offered after the District Court specifically identified factors other than monetary ones that would be legitimate reasons not to settle. Because CSC is attempting to assert a claim for both damages and attorney's fees for a refusal to settle only one month after

the Court vacated its order of dismissal, it appears that CSC is attempting to add these claims for a threatening purpose.

Finally, Local Rule 7.6 requires that before filing a motion for leave to amend a pleading the moving party must attempt to obtain consent for the filing and granting of the motion from all parties having an interest to oppose. There is nothing in the motion or memorandum in support indicating that the process seeking to obtain consent was undertaken by CSC. After considering the Rule 15(a) factors, the Court denies the motion for leave to amend CSC's answer to assert a counterclaim.

**IV.   Conclusion**

**IT IS ORDERED** that the Defendant's **Motion for Leave to Amend its Answer to Assert a Counterclaim (R. Doc. 181)** is **DENIED.**

New Orleans, Louisiana, this 27th day of July 2018.

**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**